EASTMAN GARDINER HARDWOOD CO. *v.* HALL.*

(Division B. Dec. 22, 1924. Suggestion of Error overruled Jan. 26, 1925.)

[102 So. 270.   No. 24533.]

1. LOGS AND LOGGING.   *To sustain damages for breach of contract, by which plaintiff was to cut timber, proof that plaintiff had established business not necessary.*

In an action for the breach of a contract for cutting timber from lands and loading it upon cars, the damages may be sustained on proof of the contract price and proof of what it would cost to perform the contract, and does not require proof of an established business on the part of the plaintiff to sustain the verdict for damages.

2. PLEADING.   *Law requiring certain writings filed with declaration inapplicable to actions for breach of contract; unnecessary in actions for breach of contract to set forth writings in haec verba.*

Sections 734 and 735, Code of 1906 (Hemingway's Code, sections 517, 518), requiring certain writings to be filed with the declaration, do not apply to actions in tort for breach of contract. In such actions in tort it is not necessary to set forth the writings in *haec verba*, but it is sufficient to allege the substance of the contract and its breach.

3. LOGS AND LOGGING.   *Defendant in suit for breach of logging contract held not entitled to peremptory charge, on ground that plaintiff not willing and able to perform.*

In a suit for breach of contract, where the plaintiff had sublet a portion of the contract and testified as to his readiness and ability to perform the balance, the defendant is not entitled to a peremptory, because the plaintiff testified that he did not have the money to complete the full contract and was dependent on collecting for logs as loaded on cars for money, and that he did not have a specific agreement with the defendant to pay as loaded, or to advance him money, where the correspondence constituting the contract indicates the taking up and paying for the logs as loaded.

4. DAMAGES.   *Amount earned by plaintiff, in suit for breach of contract, during period required for performance, should be applied in reduction of damages pro tanto.*

Where the plaintiff, during the period it would have taken to perform the contract, earns money by other contracts, the amount earned should be applied in reduction of damages *pro tanto*.

*Headnotes 1. Logging, 25 Cyc., p. 1556; 2. Pleading, 31 Cyc., pp. 65, 556; 3. Logging, 25 Cyc., p. 1556; 4. Damages, 17 C. J., section 225.

APPEAL from circuit court of Jones county, Second District.

HON. R. S. HALL, Judge.

Action by L. A. Hall against the Eastman Gardiner Hardwood Company. Judgment for plaintiff, and defendant appeals. Affirmed, with remittitur.

*C. S. Street,* for appellant.

This is a suit to recover lost profits by reason of the alleged breach of contract. The profit which is sought to be recovered is the difference between what it would have cost appellee to cut and haul the timber and the amount he was to receive for it after it was cut. The court refused to instruct the jury that the sums necessarily expended by appellee in getting ready to carry out the contract on his part should be deducted from the profits he would have made if the contract had been fulfilled. The first error assigned is that the court erred in allowing appellee to introduce in evidence the letters he had written to the appellant. The declaration averred that the contract between the parties was made by "various correspondence," and attached to it were copies of the letters written to the appellee by the appellant; but copies of the letters written by appellee to appellant were not attached to the declaration, nor did the declaration aver that he did not have copies, nor did it in anyway attempt to set forth the contents of such letters. It is submitted that the letters of appellee were as much a part

of the contract as the letters of appellant, and if it was proper, under the statute, to attach copies of the one, it was and is, also, necessary under the statute to attach copies of the other. Section 517, Hemingway's Code; Section 518, Hemingway's Code. The two statutes quoted are plain, and require that copies of the writings shall be annexed to or filed with the pleading. *W. M. Flick & Co.* v. *Brewer et al.,* 96 So. 402.

Appellee could not recover for labor on ramps, when he had not sued for any such item, and did not amend or offer to amend his declaration, so as to include it. The testimony was incompetent for another reason, and that is, it was a part of the expense incurred by him in getting ready to carry out the contract. The court erred in overruling the motion of appellant to exclude the evidence of appellee and direct a verdict for appellant.

Before one can recover damages for breach of contract, he must prove—(a)  His acceptance of all terms and conditions of the contract, and that such acceptance was communicated to the other party to the contract. *Box Company* v. *Veneer Company,* 96 So. 103; (b) that he was ready, willing and able to perform the contract. *Leek Milling Co.* v. *Langford,* 81 Miss. 728; (c) that he made reasonable exertion to prevent loss by obtaining other employment. *Batesville-Southwestern R. R. Co.* v. *Vick,* 99 So. 7; (d) that the business of plaintiff is an established one, otherwise he cannot recover alleged lost profits. *White* v. *Leatherberry,* 82 Miss. 103; *Crystal Springs Ice Co.* v. *Holliday,* 106 Miss. 714, and authorities there cited; (e) that the data or estimation of profits are so definite and certain that they can be ascertained reasonably by calculation, and even then the party at fault must have had notice, either from the nature of the contract itself, or by explanation of the circumstances at the time the contract was made, that such damages would ensue from non-performance. *Ragsdale* v. *Railroad Co.,* 46 Miss. 483; *Crystal Springs Ice Co.* v. *Holliday, supra.*

The first and second instructions are wrong. The plaintiff was not entitled to a peremptory, and the second instruction (on the measure of damages) leaves out all elements of expense except "cutting, hauling and putting the timber on the cars at Crump Switch." Appellee's testimony was indefinite and uncertain as to the cost of cutting and putting the timber on the cars. This instruction leaves out of consideration the cost to appellee of keeping up the roads, which he himself estimated at twenty-five cents per thousand; and, on four hundred thousand feet, this amounts to one hundred dollars. The instruction, also, takes from the jury the right to deduct the sum of five hundred fifteen dollars which appellee swore he expended in getting ready to haul the timber, and leaves out any consideration of the one hundred thirty dollars, which he said, that he cleared by hauling a part of this same timber for the Bond Lumber Company. The court erred in refusing instructions 3, 4, 5, 6 and 7, and each of them, asked by appellant. *Crystal Springs Ice Co. v. Holliday, supra.*

The court erred in overruling the motion for a new trial. And what has been heretofore said makes this assignment well taken, as well as the ninth assignment, that the verdict and judgment are contrary to the law and the evidence. The verdict is excessive. It is plain that the one hundred thirty dollars earned in hauling this timber for the Bond Lumber Company should have been deducted.

*Collins & Collins,* for appellee.

The jury was instructed by the court on behalf of the defendant not to consider the testimony with reference to the money expended in making preparations to carry out the contract, and although it was an oral instruction by the court, it was on the question of the competency of testimony, and the court excluded the testimony from the jury.

''Did the court err in allowing appellee to introduce in evidence the letters that he had written to appellant?'' It will be noticed by the court that those letters which were written by appellee to appellant were in the possession of appellant, and appellee had only the letters that he had received from appellant. A notice was given to appellant before the trial of the case to produce these letters on the trial of the case, or evidence would be introduced as to their contents. And on the trial of the case appellant produced the letters and they were introduced in evidence. The letters written by appellant to appellee were set out in the declaration, and were all that could be set out by appellee, and appellant had notice of the fact before the trial of the case in the circuit court that he must produce these letters. Now, the letters of appellant which are set out in the record constitute a complete contract with appellee within themselves. It will be seen from the record of these letters set out as exhibits to the declaration, and introduced in evidence that a complete contract is stipulated therein with appellee. Even if appellant is correct in his interpretation of section 517 and 518, Hemingway's Code, which we do not concede, this does not avail him anything in this case, because appellee has filed with his declaration a complete contract upon which he bases his claim for damages against appellant. And if this is a complete contract, as it is, within itself, then it was not necessary to file any copy of letters that appellee wrote to appellant as exhibits to his declaration. If appellant is correct in his contention that these statutes apply in this case and that appellee in filing his declaration failed to comply with the statute because he failed to file with his pleadings the letters, or the copy of letters written to appellant, then there would be no case in which recovery could be had where a contract was made by correspondence, if one of the contracting parties failed to keep a copy of the letters

written to the other party. The letters written by appellee in this case were in possession of appellant. We do not believe that the legislature ever intended to lay down any such harsh rule. If it did, then it would force every man who made a contract by correspondence, before he could make it legal and binding, to keep a copy of his letters so that he could, in case of suit, file them with his declaration. The law does not contemplate and does not mean that a party filing a suit must file a copy of a letter, or a writing that is in the opposite parties' possession, and of which the declaring party has no copy. But the complete answer to appellant's argument is that the letters from appellee to appellant are not ''the writing'' contemplated in the statutes upon which appellee is relying in this case to recover, because the complete contract is contained in the letters from appellant to appellee, and which were filed with the declaration. The case of *W. M. Finch & Company* v. *Brewer et al.*, 96 So. 402, is not in point in this case, because it does not refer to any ''writing,'' but refers to the adequacy of an itemized statement.

''Did the court err in overruling appellant's objection to certain evidence shown by the stenographer's notes to have been objected to?'' With reference to ''labor in putting up ramps,'' it will be noticed that the court excluded all the evidence from the consideration of the jury with reference to expenses made by appellee in preparing to carry out the contract.

''Did the court err in failing to peremptorily charge the jury to find for appellant?'' It will be noticed from the letters of appellee and appellant that the terms of the contract were accepted by appellee. Nothing was expected by appellant from appellee, nothing was required of him in the letter except to notify the company when he had some logs on. This he did by his letter. Appellant cites the case of *Box Company* v. *Veneer Company*, 96 So. 103. But this case is not in

point, for the reason that appellant in the Box Company case, *supra*, sent an order to appellee and expressly requested an acceptance of the order in writing and appellee did not reply. The record shows, and it is not disputed, that appellee had procured a Mr. Rutland and a Mr. Tew, to do the hauling for him, each of whom had an ox team and was to do the hauling at their own expense for four dollars per thousand feet, and they testified that they were ready, willing and able to do this. The testimony of the plaintiff in this case shows that appellee had made all the arrangements, had men and teams ready to cut the timber, and ready to haul it to the cars and load it on the cars. The case of *Leek Milling Company* v. *Langford,* 81 Miss. 728, cited by appellant in his brief, was a case in which appellee contracted to cut some shingles and furnish his own mill and machinery with which to do it, and the party from whom he bought the mill and machinery took the mill away from him a time or two while he was undertaking to perform the contract, and so hindered and delayed matters that it finally made it impossible for him to perform the contract and appellant was forced to breach the contract. The court held in that case that it was a question of fact for the jury to determine whether or not he was able to perform. But there is no such case as that made by the appellant in the case before the court.

"Did appellant make reasonable exertions to reduce his damages, or prevent loss by obtaining other employment?" All there is to this argument when the record is scrutinized closely is this, counsel fixes the time himself that he will ask the witness about, namely, from February to June, while the water in the swamp prevented any cutting and hauling of this timber, and before the contract was breached. He asked appellee if he did anything during that time to reduce his damages, or try to get him any other job. It will be noticed all

along that appellee has reference to this time, and he tells counsel in one or two places that the time that he had when it was not raining and when the swamp was not too wet, he was making preparations to carry out the contract. It is positively shown by the record that appellee was not idle during the time after the contract was breached. But appellant nowhere shows that appellee made any clear profits which should have been deducted from the profits he would have made if he had been permitted to carry out the contract with the Eastman-Gardiner Hardwood Company. It will be noticed that he was doing the best he could under a different contract, hauling the logs about a mile further than he would have had to haul them under the contract with appellant. And furthermore, the testimony shows that appellee did not himself have any other contract, but was working for someone else under a contract with the Bond Lumber Company. The case of *Batesville Southern Railroad Co.* v. *Vick,* 99 So. 7, cited by the counsel for appellant, is a case where appellee was employed to work by the month and was discharged before his time was up, and undertook to recover for what he would have received had he not been discharged.

"That the business of plaintiff is an established one, otherwise he cannot recover alleged profits." We do not understand the argument counsel makes on this proposition. The case of *White* v. *Leatherberry,* 34 So. 358, cited by counsel for appellant does not lay down any such rule of law as appellant contends for here. The case went up on a demurrer to the declaration. Mr. White, the plaintiff, brought suit against Leatherberry for breach of contract made by Leatherberry to deliver logs to Mr. White to be sawed into lumber and sold on the market. The court held that this being the business of Mr. White, to cut logs into lumber and sell on the market, that Mr. Leatherberry had notice of the fact that the purpose of delivering these logs to Mr. White was to

cut them into lumber and sell them. But the case before the court is not a case wherein a man is depending on selling something to the public to make his profit, but he is depending on carrying out his contract with appellant to make his profits. The case of *Crystal Springs Ice Co.* v. *Holliday,* 64 So. 658, does not apply. 3 Elliott on Contracts, sec. 2215.

"What degree of certainty is required as to the amount of damages recoverable?" A careful reading of the record in the case will show that appellee proved with almost absolutely certainty the amount of net profits he would have made had he been permitted by appellant to carry out this contract. 3 Elliott on Contracts, sec. 2130.

"There was no error in refusing to grant instructions 3, 4, 5, 6, and 7, for the defendant." The ninth assignment of error of appellant is merely a summing up of arguments made in his brief. The tenth assignment of error was, "Was the verdict excessive?" We cannot see how counsel for appellant can argue that the damages in this case were excessive. In other words, he argues that appellee in this case, even though it is undisputed that he spent five hundred fifteen dollars in carrying out the contract which was a total loss to him, should not recover, according to his figures in the last paragraph of his brief, but sixty-five dollars. We do not recall any case now that holds direct that net profits is all that can be recovered in a case of this character. And it does not seem reasonable to say that when a man has gone to the expense in making preparations to carry out a contract in an undisputed amount of five hundred fifteen dollars, and does not receive anything back from the other party to recoup the loss, that he cannot recover this amount as special damages, in addition to net profits. Appellee was not allowed to go to the jury with this testimony, and he has not taken a cross appeal in the case, and therefore, since the jury were twice instructed that they could not consider these items of damages, this question is not before the court.

The only other question with reference to the amount of damages that is before the court, is, "what were the net profits that appellee would have made had he been permitted to carry out the contract." There is no dispute in the record that he would have made two dollars on the thousand feet as net profits, and the expert timber estimator said there were six hundred thousand feet of timber on the land. A careful reading of this record will show that this case was fairly and squarely tried before a jury, and defendant was given liberal instructions. If appellant can evade this contract and escape without paying this appellee the damages recovered, then, there is no longer virtue in a solemn contract.

Argued orally by *C. S. Street* for appellant, and by *Jeff Collins,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

L. A. Hall was the plaintiff in the court below, and sued the appellant for breach of contract. The contract involved the cutting of timber from certain lands and was made by correspondence. The first letter reads as follows:

"Mt. Olive, Miss., December 26, 1922.

"Eastman Gardiner Hardwood Co.—Gentleman: In reply to your letter of 22d will say I have cut and hauled hardwood logs for about ten years. Also I worked for Mr. Cato when he was here. I have looked over the timber and don't think I could haul it for seven dollars per thousand feet. As all the timber in the dryest places has been cut and some of it would be to scrap over, and there would be so many bridges to build, I could haul it for eight dollars per thousand feet, and could commence as soon as it dries out a little. It has been raining here for the last few days and the swamps get awful bad. So if you think you could give eight dollars per thousand feet, you could send some one over here as I don't know where the line is on the north end

of the timber. Also could you fix it so I could get cars to load it on. I can't get a car now at all. So please let me hear from you at once.

. "Yours truly, [Signed] L. A. Hall."

This appellant replied to this letter as follows:

"December 27, 1922.

"Mr. L. A. Hall, Mt. Olive, Mississippi—

Dear Sir: Replying to your letter of December 26th: If you could arrange to haul the timber that we have on the Smith land between now and the first of May, we will be willing to pay your price of eight dollars to cut, haul and load on cars.

"The reason we want to put a limit on the time is because we do not feel that the present lumber market will continue to the extent that it will justify our making the price on an unlimited time. However, just at the present time the market will stand eight dollars for this work and if you can begin within the next few days and continue to put the logs out, we believe you can clean it up before May 1st.

"Please let us know if you decide to put this timber on for us.

"Yours very truly,

"Signed] Eastman Gardiner Hardwood Co."

The appellee replied to this letter as follows:

"Mt. Olive, Miss., Dec. 30, 1922.

"Eastman Gardiner Hardwood Company—

Sir: In reply to your letter of the 27th I don't think I could get the Smith timber all out by the first of May, for there is water all over the swamp now where most of the timber is and if it should be a wet spring I could not haul it before May and I don't want to promise something that I can't do, but if it gets dry in the swamp and you still want it out I would be glad to make a deal with you.

"Yours truly, [Signed] L. A. Hall."

To which appellant replied as follows:

"January 2, 1923.

"Mr. L. A. Hall, Mt. Olive, Mississippi—
Dear sir: Replying to your letter of December 30th:
It will be satisfactory to us for you to begin hauling
the Smith timber whenever it is convenient for you to
do so, or whenever you can get in the swamps, and we
will not hold you to a definite time for the completion
of moving this timber. All we ask you to do is to let
us know when you are ready to begin hauling so we
can send you a description of the land as we would not
like to take any chances in having you cut over our line.

"Yours very truly,

"[Signed]   EASTMAN GARDINER HARDWOOD CO."

To this the appellee replied:

"Mt. Olive, Miss., January 5, 1923.

"Eastman Gardiner Hardwood Co.—Sir: In reply
to your letter of January 2d, I will be ready to start
hauling the Smith timber as soon as the swamp dries
out a little. Will you help me about getting cars to load
the timber on? It is a hard matter to get cars now,
and I will have to load some along on account of getting
money to have timber cut. Also would you sell the
timber on the Smith land? I would like to buy it. I
will let you know as soon as I can get in the swamps.

"Yours truly,     [Signed]   L. A. HALL."

To which the appellant replied:

"January 8, 1923.

"Mr. L. A. Hall, Mt. Olive, Mississippi—Dear Sir:
In reply to your letter of January 5th: Of course we
will do all we can to assist you in getting cars, and do
not anticipate any trouble whatever in getting all the
cars we need to load out the logs at Crump Spur.

"With reference to the tie timber on this land, wish
to state that we would not care to sell the tie timber, ex-
cept on condition that nothing be cut until after the logs
for our hardwood mill have been cut. We would not care
to have any one cutting ties on land that had not been
cut over. If an arrangement of this kind would be satis-

factory, let us know and we will be glad to make you a price on all the tie timber we have.

"Yours truly,

"[Signed]      EASTMAN GARDINER HARDWOOD CO."

The appellee wrote the appellant as follows:

"Mt. Olive, Miss., February 26, 1923.

"Eastman Gardiner Hardwood Co.—Gentlemen: I think that I can start to hauling the Smith hardwood for you by the first of March so please send me the description of the Smith land so I will know where to make roads and where to bridge the river, also how you want the timber cut, how small and what length and so on. Please let me hear from you at once.

"Yours truly      [Signed]      L. A. HALL.

"Mt. Olive, Miss., R. 5, Box 13."

To which the appellant replied:

"February 28, 1923.

"Mr. L. A. Hall, Route No. 5, Box Number 13, Mt. Olive, Miss.—Dear Sir: Replying to your letter of February 26: When you start cutting on the Smith timber, the land numbers which we are inclosing, please be sure and follow the following instructions:

"Cut logs twelve, fourteen and fifteen feet unless it is a case of saving timber or using up a tree. In cases of this kind you can cut a ten-foot log, if necessary. We want all of the sound timber cut close to the ground. Do not leave any high stumps. The fact of the matter is, we are not cutting anything above sixteen or eighteen inches from the ground, and in some instances we are going as low as one foot above the ground. We mention this as you no doubt know the best of the tree is in the butt cut, and all of the good timber that is left in the stumpage is simply a loss. We want to cut this timber so that we will not have anything smaller than twelve inches in diameter twelve feet above the ground, except in the hickory and ash. In these two items we would like to have them cut down as small as eight or ten inches. We want you to use your judgment in cutting this timber

and cut the logs for grade as much as possible. In other words, if you have a tree that has twelve feet of good material and probably another cut or two of rough material, do not cut your butt log sixteen feet and make part of it a rough log and part of it clear, but cut the log twelve feet long and cut your rough stuff into lengths suitable to clean up the trees. We do not want you to haul any rotten or unsound timber. The freight rate is very high and will not justify us to try to handle. When you start at any particular place, try to clean up, as you go.

"As soon as you have gotten started and have some logs on, please let the writer know and he will make a trip over there to show you anything you might need to know with reference to getting this timber out.

"Yours very truly,

"[Signed]     EASTMAN GARDINER HARDWOOD Co."

Appellee wrote appellant the following letter:

"Mt. Olive, Mass.   June 14, 1923.

"Eastman Gardiner Hardwood Co.—Sir: The swamp has just got dry enough so I can get in there to haul the Smith hardwood for you and have started to cutting some logs and putting my bridges back from where the big rain washed them up so I will send you some logs in a few days.

"Yours truly,          [Signed]     L. A. HALL."

To which letter the appellant replied as follows:

"June 15, 1923.

"Mr. L. A. Hall, Mt. Olive, Miss.—Dear Sir: Replying to your letter of June 14th: If you have gone ahead and cut any of the Smith timber without taking the matter up with us, we are certainly very sorry.

"The last correspondence we appear to have had with you in regard to this was in December last. At that time we wrote you that you could go ahead and put on the timber between that time and May 1st, so you had no right at all to log any of this timber after May 1st on that letter. All of this timber has been sold to

the J. T. McRainey Lumber Company and is their property. Do not load any of it to us at Laurel.

"Yours very truly,

"[Signed]          EASTMAN ·GARDINER HARDWOOD CO."

The appellee testified that he had arranged to cut this timber and hired two men to haul it at four dollars per thousand feet, that he had hired cutters, and that he could have loaded it on the cars in accordance with the contract at six dollars per thousand feet, and that he would have made two dollars per thousand feet upon his contract. He further introduced timber estimators, who testified to the amount of the timber upon said land. He further testified that the reason he did not begin earlier was that the swamps were covered with water and he could not go in and haul the timber until June. That he had no knowledge of the sale until he received the letter above set out, notifying him of that fact. He further testified that he did not make during the period it would have required to have performed this contract more than one hundred thirty dollars. The defendant rested upon the plaintiff's proof, offering no testimony in reference to the transaction at all, but moved for a directed verdict, which was refused.

The appellant contends that it should have had a peremptory instruction, because the plaintiff did not prove that he had an established business in the cutting of logs by which he could calculate with reasonable certainty the amount of his damages, and relies upon *Crystal Springs Ice Co.* v. *Holliday,* 106 Miss. 714, 64 So. 658, as authority for this position. The business here involved is not like a mercantile or ice business, where the profits or loss depend upon the amount of trade secured, uncertain prices, and other charges. The contract here involved was for a specific price, and the plaintiff's evidence is that he contracted as to certain parts of the work, and that he could perform the other work so as to make the net cost to him six dollars per thousand feet. We think the proof is sufficient to show with reasonable

certainty that the breach of the contract damaged the plaintiff, and that the elements of damages are proven with reasonable certainty.

It was also contended that it was error to introduce the letters from the plaintiff to the defendant, because they were not attached to the declaration, and it is contended that they must be so attached under sections 734 and 735, Code of 1906 (sections 517 and 518, Hemingway's Code), which read as follows:.

"These shall be annexed to or filed with the declaration in every case founded on an open account, a copy of the account or bill of particulars of the demand; and in actions founded on any writing, a copy of such writing, with the names of subscribing witnesses, if any, shall be annexed to or filed with the declaration; and evidence thereof shall not be given on the trial unless so annexed or filed; and the same shall constitute a part of the record of the cause.

"A copy of any writing of which profert is made, or ought to be made, in any pleading, shall be annexed to or filed with the pleading, with the names of the subscribing witnesses, if any, and evidence thereof shall not be given at the trial unless so annexed or filed; and every writing filed with any pleading, as part of it, shall thereby become a part of it, and be so considered for all purposes of the action.".

This is not a suit seeking the performance of a contract, but is a suit for the breach of a contract founded in tort, and the court below committed no error in admitting the letters.

It is next insisted that the proof does not show that the plaintiff was willing and able to perform his contract. The plaintiff testified that he did not have the money to finance the entire contract, and that he depended or calculated on getting money from the defendant for the cars as loaded. It does appear from the letters above set out that he expected to procure pay for the lumber as delivered on cars. He succeeded in making contracts

137 Miss.—24.

which bound other parties to perform at least a part of the contract, and it does not appear that the plaintiff would not have been able to have carried out his contract. It is true that the proof shows he had not arranged with the defendant specifically for financial aid, yet we think he had a right to assume from the correspondence with the defendant that it would take the logs as loaded and pay for them.

It is next insisted that the judgment must be reduced because the plaintiff did not reduce his damages or make reasonable effort so to do. The plaintiff testified to expending certain moneys in preparation for carrying out the contract amounting to something like five hundred dollars, a part of which was for the purchase of a wagon and mules, and some for building bridges. This evidence was excluded by the court below, it being objected to by the appellant in the first instance, and it is insisted that the court ought to have deducted these sums and the one hundred thirty dollars from the amount of the recovery.

We think the court below rightfully excluded this evidence, and that it cuts no figure in the case. However, we think that the one hundred thirty dollars earned should have been deducted from the amount of recovery. In all other respects we find no error in the record. If the plaintiff will remit one hundred thirty dollars, the judgment will be affirmed; otherwise, it will be reversed and remanded.

*Affirmed, with remittitur.*